

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-13-2001

# Krueger Assoc Inc v. Amer Dist Telegraph

Precedential or Non-Precedential:

Docket 00-1125

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Krueger Assoc Inc v. Amer Dist Telegraph" (2001). *2001 Decisions.* Paper 75.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/75

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 13, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 00-1125 / 00-1138

KRUEGER ASSOCIATES, INC.,
Individually and Trading as
National Fulfillment Services,

v.

THE AMERICAN DISTRICT TELEGRAPH
COMPANY OF PENNSYLVANIA;
ADT SECURITY SYSTEMS, INC.,

ADT SECURITY SYSTEMS INC.,

Defendant/Third-Party Plaintiff

v.

EUGENE KRUEGER, Individually
d/b/a HOLMES CORPORATE CENTER
d/b/a HOLMES INDUSTRIAL OFFICE CENTER;
SAMUEL MENDICINO, Individually
d/b/a HOLMES CORPORATE CENTER
d/b/a HOLMES INDUSTRIAL OFFICE CENTER,

         Third-Party
         Defendants/Appellants
         (No. 00-1125)

Krueger Associates, Inc.,

         Appellant (No. 00-1138)

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 93-cv-01040)
(District Judge: Honorable Robert F. Kelly)

Argued January 19, 2001

Before: ROTH and BARRY, Circuit Judges
SHADUR,* District Judge

(Opinion filed April 13, 2001)

       Timothy T. Myers, Esquire (Ar gued)
       John M. Elliott, Esquire
       Patricia C. Collins, Esquire
       Elliott Reihner Siedzikowski &
        Egan, P.C.
       Union Meeting Corporate Center
       925 Harvest Drive
       Blue Bell PA 19422

        Attorneys for Plaintiff/Appellant

       Howard J. Bashman, Esquire
        (Argued)
       Jeremy D. Mishkin, Esquire
       Jill Baisinger, Esquire
       Montgomery McCracken Walker &
        Rhoads, LLP
       123 South Broad Street
       Philadelphia PA 19109

       Frederick T. Lachat, Jr., Esquir e
        (Argued)
       Margolis Edelstein, Esquire
       The Curtis Center, Fourth Floor
       Independence Square West
       6th & Walnut Streets
       Philadelphia PA 19106

        Attorneys for Defendants and
Third-Party Plaintiffs/Appellees
_____

* Honorable Milton I. Shadur, United States District Judge for the
Northern District of Illinois, sitting by designation.

Jeffrey B. McCarron, Esquire
 (Argued)
Swartz Campbell & Detweiler
1601 Market Street, 34th Floor
Philadelphia PA 19103

 Attorneys for Third-Party
Defendants/Appellants

OPINION OF THE COURT

SHADUR, District Judge:

This appeal stems from a fire that occurred on February
4, 1992 at a corporate office building owned by one of the
appellants in this action, Holmes Corporate Center
("Holmes"). Krueger Associates, Inc., individually and
trading as National Fulfillment Services ("National
Fulfillment"), a commercial tenant at the corporate center
whose offices were damaged by the fir e, is the other
appellant.1 American District T elegraph Company of
Pennsylvania and ADT Security Systems, Incorporated
(collectively referred to as "ADT ," treated hereafter as a
singular noun for convenience), which providedfire and
burglar alarm services at the corporate center pursuant to
a series of written agreements with Holmes, ar e appellees.

National Fulfillment initiated the action on February 26,
1993 via a multi-count complaint against ADT , seeking to
recover its uninsured losses from thefire. Federal
jurisdiction was invoked under 28 U.S.C. S1332 based on
the parties' diverse citizenship. At their cor e, National
Fulfillment's claims rested on the allegation that ADT's
alarm system failed to alert fire fighters of the blaze in a
timely manner. That alleged failure supposedly allowed the
fire to burn out of control, causing National Fulfillment to

_____

1. Eugene Krueger was one of two general partners in Holmes and was
the sole shareholder of Krueger Associates at the time of the fire. We
refer to appellants as "Holmes" and "National Fulfillment" to avoid any
confusion that might result from the use of the Krueger name to
designate either appellant.

3

suffer commercial and property losses for which it was underinsured.

Several factors posed potential problems for National Fulfillment's action against ADT. For one, National Fulfillment itself had not contracted with ADT for the provision of alarm services. Instead, ADT provided alarm services to the office complex pursuant to a written series of agreements with Holmes. Additionally, when ADT contracted with Holmes to provide alarm service to Holmes (in the "Holmes-ADT Contract"), it substantially limited the scope of its undertaking by a contractual pr ovision disclaiming all warranties and expressly limiting liability. Although National Fulfillment claims to have been unaware of that provision in the Holmes-ADT Contract, it will be recalled that Eugene Krueger held an ownership interest in both Holmes and National Fulfillment (see n.2).

After National Fulfillment sued ADT, the latter brought Holmes into the litigation by filing a thir d-party complaint against it. In that third-party complaint ADT sought defense and indemnification from Holmes against National Fulfillment's suit pursuant to this provision in Holmes-ADT Contract PE:

> IN THE EVENT ANY PERSON, NOT A PARTY TO THIS
> AGREEMENT, SHALL MAKE ANY CLAIM OR FILE ANY
> LAWSUIT AGAINST ADT FOR FAILURE OF ITS
> EQUIPMENT OR SERVICE IN ANY RESPECT,
> [HOLMES] AGREES TO INDEMNIFY, DEFEND AND
> HOLD ADT HARMLESS FROM ANY AND ALL SUCH
> CLAIMS AND LAWSUITS INCLUDING THE PA YMENT
> OF ALL DAMAGES, COSTS AND ATTORNEYS FEES.

Holmes' answer to the third-party complaint asserted a cross-claim against National Fulfillment, claiming that National Fulfillment had a contractual obligation to provide a defense of, and indemnification for, ADT's claims against Holmes.

ADT then moved for summary judgment both against National Fulfillment on the latter's claims against ADT and against Holmes on ADT's claim for defense and indemnification. On December 20, 1994 the district court granted summary judgment in favor of ADT with r espect to

4

its claim for defense and indemnity from Holmes, but it denied the motion as to National Fulfillment's claims, apparently to allow National Fulfillment to conduct discovery. In the same order the district court ruled that the conflict of interest created by Eugene Krueger's dual role as sole shareholder of National Fulfillment and as one of two general partners of Holmes precluded Holmes' control of ADT's defense. After discovery closed almost two years later, in October 1996 the district court granted ADT's renewed motion for summary judgment on all of National Fulfillment's claims.

Holmes and National Fulfillment appealed those decisions, but on June 25, 1997 a panel of this Court dismissed those appeals for lack of jurisdiction because some issues in the litigation still remained unresolved: quantification of the amount of attorneys' fees recoverable by ADT pursuant to the Holmes–ADT Contract and a ruling on Holmes' crossclaim for indemnification fr om National Fulfillment based on their lease. Those issues wer e later ruled on by the district court. It held that ADT was entitled to an award of $313,185.83 in attorneys' fees, reducing ADT's original request of $403,440.83 by $90,255. It also found that Holmes was not entitled to indemnification from National Fulfillment based on the lease.

National Fulfillment appeals the grant of summary judgment against it and the district court's denial of National Fulfillment's motions for sanctions against ADT for alleged discovery violations. Holmes appeals (1) the district court's order that ADT was entitled to defense and indemnification under the Holmes–ADT Contract, (2) the district court's rejection of Holmes' cr oss-claim against National Fulfillment and (3) the court's fee deter mination. We will begin with the issues raised by National Fulfillment, then turn to those raised by Holmes. W e affirm the orders of the district court in all respects.

National Fulfillment's Appeal

We first examine National Fulfillment's contention that the district court improperly granted summary judgment on its claims against ADT. National Fulfillment appeals the

dismissal of its five claims sounding in (1) strict liability, (2) negligence, (3) breach of implied warranty, (4) fraud and (5) negligent misrepresentation.

Initially we note, despite National Fulfillment's protestations to the contrary, that nothing pr ohibited the district court from ruling on ADT's renewed motion for summary judgment. Under the law of the case doctrine the district court's denial of ADT's initial summary judgment motion did not create any bar to the court's later reconsideration of the renewed motion (see, e.g., Deisler v. McCormack Aggregates Co., 54 F .3d 1074, 1086 n. 20 (3d Cir. 1995), quoting Schultz v. Onan Corp ., 737 F.2d 339, 345 (3d Cir. 1984)). After having tur ned down ADT's first try without opinion in an apparent effort to allow National Fulfillment to conduct discovery, the district court surely acted within its discretion in reconsidering the motion post-discovery.2

We turn then to National Fulfillment's substantive claims against ADT, with Pennsylvania law pr oviding the rules of decision. None survives analysis.

First, we agree with the district court that National Fulfillment has no cause of action in strict liability against ADT (see Lobianco v. Property Prot., Inc., 437 A.2d 417 (Pa. Super. Ct. 1981)). Three members of the seven-judge court in Lobianco rejected the application of Restatement (Second) of Torts ("Restatement") S402A because (just as in this case) the provider of an alarm system (in that instance a burglar alarm) was not being sued by an "otherwise defenseless victim" (id. at 424): There the homeowner (just like National Fulfillment here) knew everything about the value of the property at risk (as the alarm system pr ovider did not), could get insurance against the loss and should not be permitted to shift the risk of loss to the alarm system provider "as a cost of doing business" (id. at 424-25). Two other members of the court joined in holding Restatement S402A inapplicable, for the reason that (just as in this case) the harm to the owner's property was the foreseeable consequence of the alarm system's malfunctioning, not the

_____

2. Indeed, any claimed error the district court might arguably have made in reconsidering the motion would have been har mless in any event.

6

result of a product that was itself defectively manufactured and hence unsafe (id. at 426-27). In sum, National Fulfillment's attempted invocation of the Restatement's strict liability provision runs counter to Pennsylvania law.

Nor is there any merit to its negligence claim. ADT owed no legal duty in tort to National Fulfillment when it contracted to provide Holmes with fir e alarm services (see Gerace v. Holmes Prot. of Phila., 516 A.2d 354, 358 (Pa. Super. Ct. 1986)). And there is no basis for finding such a duty under subsection (c) of Restatement S324A to enable National Fulfillment to proceed in negligence against ADT, for just as in Gerace (see id.) ther e is no evidence of National Fulfillment's harm having come fr om its reliance on ADT's undertaking to Holmes.3 To the contrary, National Fulfillment's nebulous contention that it suf fered harm because it decided to forgo other protective services in reliance on the ADT system is not only unsupported by the record but is actually contradicted by the evidence that it, at the recommendation of its insurance company, installed Halon extinguishers before the fire.

Moreover, any actual reliance by National Fulfillment (and none has been shown) would not have been reasonable. ADT's system was a detection system, not a fire suppression system. Nothing prevented National Fulfillment from installing fire suppression devices (as, for example, a sprinkler system). National Fulfillment cannot use Holmes' purchase of alarm services from ADT to excuse its own failure to take steps adequately calculated to protect itself from fire-related losses.

National Fulfillment's third claim--br each of implied warranty--similarly falls flat. Under Pennsylvania law implied warranty claims by parties not in privity with the

_____

3. Though National Fulfillment's counsel made a more general reference to Restatement S324A during oral argument, its briefs on appeal focused entirely on its claim of reliance (the subject covered by subsection (c)). It is scarcely in a position to expand its contentions belatedly in that fashion, but in any event subsection (b) is plainly inapplicable by its terms, and any subsection (a) claim would be scotched by the holding in Turbe v. Government of the Virgin Islands, 938 F.2d 427, 432 (3d Cir. 1991).

defendant may be maintained only in cases gover ned by the UCC's warranty provisions or by RestatementS402A (see Manor Junior Coll. v. Kaller's Inc., 507 A.2d 1245, 1249 (Pa. Super. Ct. 1986)). That alone would suffice to affirm the dismissal of the claim: We have already found Restatement S402A inapplicable, and it is at best questionable that the UCC applies in the present context.4  But even if we were to adopt the doubtful premise that UCC's Art. 2 could potentially come into play, it is plain that ADT successfully disclaimed all implied warranties in Holmes-ADT Contract PE, and that the disclaimer was effective against National Fulfillment (see 13 Pa. C.S. S2316, S2318 cmt. 1).

Finally, National Fulfillment's fourth and fifth claims-- fraud and negligent misrepresentation--fail as well. Without specific citation to the record, National Fulfillment asserts in conclusory fashion that ADT made misrepr esentations that could be the basis for such claims. But National Fulfillment's only predicate for that contention rests on ADT's alleged discovery violations that occurr ed after the fire. It goes without saying that an asserted misrepresentation that post-dated thefire could not have caused any of National Fulfillment's fir e-related injuries.

And any notion that ADT's alleged discovery violations prevented National Fulfillment from discovering any possible misrepresentations ADT might have made before the fire is, as the district court noted, absurd. By definition any representation on which a party has purportedly relied has to be known to that party--else how could reliance take place? National Fulfillment's total failur e to have identified any such misrepresentations by ADT is fatal to any claim of

---

4. Although National Fulfillment contends that Cucchi v. Rollins Prot. Servs. Co., 574 A.2d 565 (Pa. 1990) holds that the UCC applies to transactions involving the lease of goods (specifically, a burglar alarm system), that seriously overstates Cucchi's holding. Cucchi involved a plurality opinion in which only two of the seven justices found that UCC Art. 2 applied to the lease of the burglar alarm system, while the majority of the justices disavowed that proposition. Since then the Pennsylvania Supreme Court has emphasized that Cucci's precedential authority "is limited to the facts of that case" (Keblish v. Thomas Equip. Ltd., 660 A.2d 38, 40 n.1 (Pa. 1995))--the type of damnation by faint praise that signals an exceedingly weak reed on which to lean.

reliance, which is an essential component of any claim of fraud or negligent misrepresentation.

That leaves just two tag ends to be cleaned up in this part of the appeal. First, the absence of any viable substantive claim of course deprives National Fulfillment's request for punitive damages of any underpinning. We also affirm the denial of that claim. Second, we likewise affirm the district court's rejection of National Fulfillment's requests for sanctions based on ADT's alleged spoliation of evidence. Simply put, National Fulfillment has pr ovided no basis to conclude that the district court committed an abuse of discretion in denying those requests.5

Holmes' Appeal

As for appellant Holmes, it first challenges on two grounds the district court's determination that it was required to defend ADT pursuant to a clause in the Holmes–ADT Contract:6

> 1. Holmes contends that the contractual pr ovision on which the defense and indemnity provision was based was inconspicuous and therefore unenfor ceable.

> 2. Even if the provision were found to be enforceable, Holmes argues that it assertedly did not r equire Holmes to pay ADT's legal costs associated with defending against National Fulfillment's suit.

Both of those contentions also fail.

_____

5. We are relatedly constrained to observe that the presentation of the "facts" relating to this appeal in National Fulfillment's briefs before us was improperly one-sided, not at all in confor mity with the responsibility
of an appellant to tender an objective portrayal. And National Fulfillment spent an inordinate amount of time arguing that ADT's alleged commission of discovery violations should serve as a predicate for liability. Those unsuccessful efforts seem little more than an attempted papering over of the weakness of its original claims.

6. Both sides agree that because ther e is no judgment against ADT, any issues involving the validity of the indemnity pr ovision are moot. All that
remains in this portion of the appeal is the question whether the Holmes–ADT Contract required Holmes to pay ADT's defense costs.

As to Holmes' first argument, Pennsylvania law does countenance certain claims of unconscionability when "based on inconspicuous or unclear contractual language, in particular, if the parties have unequal bargaining power" (Harris v. Green Tree Fin. Corp., 183 F.3d 173, 182 (3d Cir. 1999)). But simply to state that proposition confirms its inapplicability here. As the district court noted, the controlling provision was contained in a boldface paragraph written in its entirety in capital letters––typography that distinguished it from other provisions on the reverse side of the contract. And the contract's text, also in a boldface legend set forth immediately above the signatur e line, specifically directed the signer's attention to the terms and conditions on that reverse side. Nor is ther e any room for disputing the clarity of the provision. Finally, nothing in the evidence suggests any material (or indeed any) dif ference in bargaining power between ADT and Holmes. In sum, there is no basis for holding the provision unconscionable.

Holmes also says that it was not requir ed to pay ADT's defense costs according to the terms of the Holmes–ADT Contract. According to Holmes, the absence of any judgment against ADT precludes an award of attorneys' fees under the contract. Not so, for Holmes–ADT Contract PE required Holmes both to indemnify and to defend ADT. So when National Fulfillment filed suit against ADT, that event alone triggered Holmes' obligation to defend ADT. Holmes' assertion that the contractual defense pr ovision somehow extends only to meritorious claims has no basis whatever. To the contrary, the pr ovision specifies that Holmes' obligation extends to "any claim or lawsuit." We therefore hold that Holmes is expr essly obligated by the Holmes–ADT Contract to pay ADT's defense costs. 7

Next, Holmes appeals the district court's deter mination that National Fulfillment was not requir ed to indemnify Holmes for Holmes' expenses incurred in paying ADT's attorneys' fees pursuant to the Holmes–ADT Contract. Holmes contends that it is entitled to indemnification

_____

7. Holmes also contends that it should be per mitted to participate in or control ADT's defense. Because our disposition ends this case, any such prospective request for participation or control is rendered moot.

10

pursuant to this provision in its lease to National Fulfillment:

> Lessee [National Fulfillment] shall defend, indemnify, and hold harmless Lessor [Holmes] fr om and against any and all claims, demands, suits, damages, liability, and costs (including counsel fees and expenses) arising out of or in any manner connected with any act or omission, negligent or otherwise of Lessee, thir d persons, or any of their agents, servants or employees which arise out of or are in any way connected with the erection, maintenance, use, operation, existence or occupation of the Demised Premises, hallways, entranceways, stairs or any other common areas (exterior or interior), and the streets, driveways, alleys, lawns, sidewalks and curbs adjacent thereto including those resulting from any work in connection with the alterations, changes, new construction or demolition.

We agree with the district court that the quoted provision plays no role here. ADT's suit against Holmes, for which Holmes seeks indemnity, was predicated upon Holmes' breach of its contract with ADT. As such it does not "arise out of," nor is it "in any way connected with," the "erection, maintenance, use, operation, existence or occupation of the Demised Premises" in the normal sense of that lease language. Hence that claim by Holmes is also lacking in merit.

That leaves Holmes' final challenge: its assertion that the $313,185.83 awarded to ADT in attorneys' fees was excessive. Although Holmes has ignored the applicable standard of review, a district court's award of attorneys' fees is reversible only for abuse of discr etion (Washington v. Philadelphia County. Ct. Com. Pl., 89 F.3d 1031, 1034 (3d Cir. 1996)).

In its 14-page order the district court explained its reduction of ADT's requested fees by $90,255, reflecting (1) time spent in reviewing the indemnification claim against Holmes, (2) time that the court considered excessive or redundant and (3) expenses considered to be non-reimbursable overhead. Despite that car efully articulated set of downward adjustments, Holmes char ges that the

11

district court abused its discretion by not r educing the award by a greater percentage. But that ipse dixit is unaccompanied by any reasoned basis for labeling the district court's determination an abuse of discretion. We affirm that final aspect of the district court's decisions.

Conclusion

We AFFIRM the district court's grant of summary judgment on National Fulfillment's claims against ADT, its denial of sanctions for ADT's alleged discovery violations, its decision that National Fulfillment is not r equired to indemnify Holmes and its determination that Holmes is required to pay ADT $313,185.83 pursuant to the Holmes-ADT Contract.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

12