247 F.3d 61 (3rd Cir. 2001)
 KRUEGER ASSOCIATES, INC., INDIVIDUALLY AND TRADING AS NATIONAL FULFILLMENT SERVICES,
v.
THE AMERICAN DISTRICT TELEGRAPH COMPANY OF PENNSYLVANIA; ADT SECURITY SYSTEMS, INC.,
ADT SECURITY SYSTEMS INC., DEFENDANT/THIRD-PARTY PLAINTIFF
v.
EUGENE KRUEGER, INDIVIDUALLY D/B/A HOLMES CORPORATE CENTER D/B/A HOLMES INDUSTRIAL OFFICE CENTER; SAMUEL MENDICINO, INDIVIDUALLY D/B/A HOLMES CORPORATE CENTER D/B/A HOLMES INDUSTRIAL OFFICE CENTER, THIRD-PARTY DEFENDANTS/APPELLANTS,
KRUEGER ASSOCIATES, INC., APPELLANT
 Nos. 00-1125, 00-1138
 UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
 Argued January 19, 2001
Filed April 13, 2001
 
 1
 Appeal from the United States District Court for the Eastern District of Pennsylvania (D.C. Civil Action No. 93-CV-01040) (District Judge: Honorable Robert F. Kelly)[Copyrighted Material Omitted]
 
 
 2
 Timothy T. Myers, Esquire (Argued) John M. Elliott, Esquire Patricia C. Collins, Esquire Elliott Reihner Siedzikowski & Egan, P.C. Union Meeting Corporate Center 925 Harvest Drive Blue Bell PA 19422 Attorneys for Plaintiff/Appellant
 
 
 3
 Howard J. Bashman, Esquire (Argued) Jeremy D. Mishkin, Esquire Jill Baisinger, Esquire Montgomery McCracken Walker & Rhoads, LLP 123 South Broad Street Philadelphia PA 19109 Frederick T. Lachat, Jr., Esquire (Argued) Margolis Edelstein, Esquire The Curtis Center, Fourth Floor Independence Square West 6th & Walnut Streets Philadelphia PA 19106 Attorneys for Defendants and Third-Party Plaintiffs/Appellees
 
 
 4
 Jeffrey B. McCarron, Esquire (Argued) Swartz Campbell & Detweiler 1601 Market Street, 34th Floor Philadelphia PA 19103 Attorneys for Third-Party Defendants/Appellants
 
 
 5
 Before: Roth and Barry, Circuit Judges SHADUR,* District Judge
 
 OPINION OF THE COURT
 Shadur, District Judge
 
 6
 This appeal stems from a fire that occurred on February 4, 1992 at a corporate office building owned by one of the appellants in this action, Holmes Corporate Center ("Holmes"). Krueger Associates, Inc., individually and trading as National Fulfillment Services ("National Fulfillment"), a commercial tenant at the corporate center whose offices were damaged by the fire, is the other appellant.[1] American District Telegraph Company of Pennsylvania and ADT Security Systems, Incorporated (collectively referred to as "ADT," treated hereafter as a singular noun for convenience), which provided fire and burglar alarm services at the corporate center pursuant to a series of written agreements with Holmes, are appellees.
 
 
 7
 National Fulfillment initiated the action on February 26, 1993 via a multi-count complaint against ADT, seeking to recover its uninsured losses from the fire. Federal jurisdiction was invoked under 28 U.S.C. S1332 based on the parties' diverse citizenship. At their core, National Fulfillment's claims rested on the allegation that ADT's alarm system failed to alert fire fighters of the blaze in a timely manner. That alleged failure supposedly allowed the fire to burn out of control, causing National Fulfillment to suffer commercial and property losses for which it was underinsured.
 
 
 8
 Several factors posed potential problems for National Fulfillment's action against ADT. For one, National Fulfillment itself had not contracted with ADT for the provision of alarm services. Instead, ADT provided alarm services to the office complex pursuant to a written series of agreements with Holmes. Additionally, when ADT contracted with Holmes to provide alarm service to Holmes (in the "Holmes-ADT Contract"), it substantially limited the scope of its undertaking by a contractual provision disclaiming all warranties and expressly limiting liability. Although National Fulfillment claims to have been unaware of that provision in the Holmes-ADT Contract, it will be recalled that Eugene Krueger held an ownership interest in both Holmes and National Fulfillment (see n.2).
 
 
 9
 After National Fulfillment sued ADT, the latter brought Holmes into the litigation by filing a third-party complaint against it. In that third-party complaint ADT sought defense and indemnification from Holmes against National Fulfillment's suit pursuant to this provision in Holmes-ADT Contract PE:
 
 
 10
 IN THE EVENT ANY PERSON, NOT A PARTY TO THIS AGREEMENT, SHALL MAKE ANY CLAIM OR FILE ANY LAWSUIT AGAINST ADT FOR FAILURE OF ITS EQUIPMENT OR SERVICE IN ANY RESPECT, [HOLMES] AGREES TO INDEMNIFY, DEFEND AND HOLD ADT HARMLESS FROM ANY AND ALL SUCH CLAIMS AND LAWSUITS INCLUDING THE PAYMENT OF ALL DAMAGES, COSTS AND ATTORNEYS FEES.
 
 
 11
 Holmes' answer to the third-party complaint asserted a cross-claim against National Fulfillment, claiming that National Fulfillment had a contractual obligation to provide a defense of, and indemnification for, ADT's claims against Holmes.
 
 
 12
 ADT then moved for summary judgment both against National Fulfillment on the latter's claims against ADT and against Holmes on ADT's claim for defense and indemnification. On December 20, 1994 the district court granted summary judgment in favor of ADT with respect to its claim for defense and indemnity from Holmes, but it denied the motion as to National Fulfillment's claims, apparently to allow National Fulfillment to conduct discovery. In the same order the district court ruled that the conflict of interest created by Eugene Krueger's dual role as sole shareholder of National Fulfillment and as one of two general partners of Holmes precluded Holmes' control of ADT's defense. After discovery closed almost two years later, in October 1996 the district court granted ADT's renewed motion for summary judgment on all of National Fulfillment's claims.
 
 
 13
 Holmes and National Fulfillment appealed those decisions, but on June 25, 1997 a panel of this Court dismissed those appeals for lack of jurisdiction because some issues in the litigation still remained unresolved: quantification of the amount of attorneys' fees recoverable by ADT pursuant to the Holmes-ADT Contract and a ruling on Holmes' cross-claim for indemnification from National Fulfillment based on their lease. Those issues were later ruled on by the district court. It held that ADT was entitled to an award of $313,185.83 in attorneys' fees, reducing ADT's original request of $403,440.83 by $90,255. It also found that Holmes was not entitled to indemnification from National Fulfillment based on the lease.
 
 
 14
 National Fulfillment appeals the grant of summary judgment against it and the district court's denial of National Fulfillment's motions for sanctions against ADT for alleged discovery violations. Holmes appeals (1) the district court's order that ADT was entitled to defense and indemnification under the Holmes-ADT Contract, (2) the district court's rejection of Holmes' cross-claim against National Fulfillment and (3) the court's fee determination. We will begin with the issues raised by National Fulfillment, then turn to those raised by Holmes. We affirm the orders of the district court in all respects.
 
 National Fulfillment's Appeal
 
 15
 We first examine National Fulfillment's contention that the district court improperly granted summary judgment on its claims against ADT. National Fulfillment appeals the dismissal of its five claims sounding in (1) strict liability, (2) negligence, (3) breach of implied warranty, (4) fraud and (5) negligent misrepresentation.
 
 
 16
 Initially we note, despite National Fulfillment's protestations to the contrary, that nothing prohibited the district court from ruling on ADT's renewed motion for summary judgment. Under the law of the case doctrine the district court's denial of ADT's initial summary judgment motion did not create any bar to the court's later reconsideration of the renewed motion (see, e.g., Deisler v. McCormack Aggregates Co., 54 F .3d 1074, 1086 n. 20 (3d Cir. 1995), quoting Schultz v. Onan Corp ., 737 F.2d 339, 345 (3d Cir. 1984)). After having turned down ADT's first try without opinion in an apparent effort to allow National Fulfillment to conduct discovery, the district court surely acted within its discretion in reconsidering the motion post- discovery.[2]
 
 
 17
 We turn then to National Fulfillment's substantive claims against ADT, with Pennsylvania law providing the rules of decision. None survives analysis.
 
 
 18
 First, we agree with the district court that National Fulfillment has no cause of action in strict liability against ADT (see Lobianco v. Property Prot., Inc., 437 A.2d 417 (Pa. Super. Ct. 1981)). Three members of the seven-judge court in Lobianco rejected the application of Restatement (Second) of Torts ("Restatement") S402A because (just as in this case) the provider of an alarm system (in that instance a burglar alarm) was not being sued by an "otherwise defenseless victim" (id. at 424): There the homeowner (just like National Fulfillment here) knew everything about the value of the property at risk (as the alarm system provider did not), could get insurance against the loss and should not be permitted to shift the risk of loss to the alarm system provider "as a cost of doing business" (id. at 424-25). Two other members of the court joined in holding Restatement S402A inapplicable, for the reason that (just as in this case) the harm to the owner's property was the foreseeable consequence of the alarm system's malfunctioning, not the result of a product that was itself defectively manufactured and hence unsafe (id. at 426-27). In sum, National Fulfillment's attempted invocation of the Restatement's strict liability provision runs counter to Pennsylvania law.
 
 
 19
 Nor is there any merit to its negligence claim. ADT owed no legal duty in tort to National Fulfillment when it contracted to provide Holmes with fire alarm services (see Gerace v. Holmes Prot. of Phila., 516 A.2d 354, 358 (Pa. Super. Ct. 1986)). And there is no basis for finding such a duty under subsection (c) of Restatement S324A to enable National Fulfillment to proceed in negligence against ADT, for just as in Gerace (see id.) there is no evidence of National Fulfillment's harm having come from its reliance on ADT's undertaking to Holmes.[3] To the contrary, National Fulfillment's nebulous contention that it suffered harm because it decided to forgo other protective services in reliance on the ADT system is not only unsupported by the record but is actually contradicted by the evidence that it, at the recommendation of its insurance company, installed Halon extinguishers before the fire.
 
 
 20
 Moreover, any actual reliance by National Fulfillment (and none has been shown) would not have been reasonable. ADT's system was a detection system, not a fire suppression system. Nothing prevented National Fulfillment from installing fire suppression devices (as, for example, a sprinkler system). National Fulfillment cannot use Holmes' purchase of alarm services from ADT to excuse its own failure to take steps adequately calculated to protect itself from fire-related losses.
 
 
 21
 National Fulfillment's third claim--breach of implied warranty--similarly falls flat. Under Pennsylvania law implied warranty claims by parties not in privity with the defendant may be maintained only in cases governed by the UCC's warranty provisions or by RestatementS402A (see Manor Junior Coll. v. Kaller's Inc., 507 A.2d 1245, 1249 (Pa. Super. Ct. 1986)). That alone would suffice to affirm the dismissal of the claim: We have already found Restatement S402A inapplicable, and it is at best questionable that the UCC applies in the present context.[4] But even if we were to adopt the doubtful premise that UCC's Art. 2 could potentially come into play, it is plain that ADT successfully disclaimed all implied warranties in Holmes-ADT Contract PE, and that the disclaimer was effective against National Fulfillment (see 13 Pa. C.S. S2316, S2318 cmt. 1).
 
 
 22
 Finally, National Fulfillment's fourth and fifth claims-- fraud and negligent misrepresentation--fail as well. Without specific citation to the record, National Fulfillment asserts in conclusory fashion that ADT made misrepresentations that could be the basis for such claims. But National Fulfillment's only predicate for that contention rests on ADT's alleged discovery violations that occurred after the fire. It goes without saying that an asserted misrepresentation that post-dated the fire could not have caused any of National Fulfillment's fire-related injuries.
 
 
 23
 And any notion that ADT's alleged discovery violations prevented National Fulfillment from discovering any possible misrepresentations ADT might have made before the fire is, as the district court noted, absurd. By definition any representation on which a party has purportedly relied has to be known to that party--else how could reliance take place? National Fulfillment's total failure to have identified any such misrepresentations by ADT is fatal to any claim of reliance, which is an essential component of any claim of fraud or negligent misrepresentation.
 
 
 24
 That leaves just two tag ends to be cleaned up in this part of the appeal. First, the absence of any viable substantive claim of course deprives National Fulfillment's request for punitive damages of any underpinning. We also affirm the denial of that claim. Second, we likewise affirm the district court's rejection of National Fulfillment's requests for sanctions based on ADT's alleged spoliation of evidence. Simply put, National Fulfillment has provided no basis to conclude that the district court committed an abuse of discretion in denying those requests.[5]
 
 Holmes' Appeal
 
 25
 As for appellant Holmes, it first challenges on two grounds the district court's determination that it was required to defend ADT pursuant to a clause in the Holmes-ADT Contract:[6]
 
 
 26
 1. Holmes contends that the contractual provision on which the defense and indemnity provision was based was inconspicuous and therefore unenforceable.
 
 
 27
 2. Even if the provision were found to be enforceable, Holmes argues that it assertedly did not require Holmes to pay ADT's legal costs associated with defending against National Fulfillment's suit.
 
 
 28
 Both of those contentions also fail.
 
 
 29
 As to Holmes' first argument, Pennsylvania law does countenance certain claims of unconscionability when "based on inconspicuous or unclear contractual language, in particular, if the parties have unequal bargaining power" (Harris v. Green Tree Fin. Corp., 183 F.3d 173, 182 (3d Cir. 1999)). But simply to state that proposition confirms its inapplicability here. As the district court noted, the controlling provision was contained in a boldface paragraph written in its entirety in capital letters--typography that distinguished it from other provisions on the reverse side of the contract. And the contract's text, also in a boldface legend set forth immediately above the signature line, specifically directed the signer's attention to the terms and conditions on that reverse side. Nor is there any room for disputing the clarity of the provision. Finally, nothing in the evidence suggests any material (or indeed any) difference in bargaining power between ADT and Holmes. In sum, there is no basis for holding the provision unconscionable.
 
 
 30
 Holmes also says that it was not required to pay ADT's defense costs according to the terms of the Holmes-ADT Contract. According to Holmes, the absence of any judgment against ADT precludes an award of attorneys' fees under the contract. Not so, for Holmes-ADT Contract PE required Holmes both to indemnify and to defend ADT. So when National Fulfillment filed suit against ADT, that event alone triggered Holmes' obligation to defend ADT. Holmes' assertion that the contractual defense provision somehow extends only to meritorious claims has no basis whatever. To the contrary, the provision specifies that Holmes' obligation extends to "any claim or lawsuit." We therefore hold that Holmes is expressly obligated by the Holmes-ADT Contract to pay ADT's defense costs.[7]
 
 
 31
 Next, Holmes appeals the district court's determination that National Fulfillment was not required to indemnify Holmes for Holmes' expenses incurred in paying ADT's attorneys' fees pursuant to the Holmes-ADT Contract. Holmes contends that it is entitled to indemnification pursuant to this provision in its lease to National Fulfillment:Lessee [National Fulfillment] shall defend, indemnify, and hold harmless Lessor [Holmes] from and against any and all claims, demands, suits, damages, liability, and costs (including counsel fees and expenses) arising out of or in any manner connected with any act or omission, negligent or otherwise of Lessee, third persons, or any of their agents, servants or employees which arise out of or are in any way connected with the erection, maintenance, use, operation, existence or occupation of the Demised Premises, hallways, entranceways, stairs or any other common areas (exterior or interior), and the streets, driveways, alleys, lawns, sidewalks and curbs adjacent thereto including those resulting from any work in connection with the alterations, changes, new construction or demolition.
 
 
 32
 We agree with the district court that the quoted provision plays no role here. ADT's suit against Holmes, for which Holmes seeks indemnity, was predicated upon Holmes' breach of its contract with ADT. As such it does not "arise out of," nor is it "in any way connected with," the "erection, maintenance, use, operation, existence or occupation of the Demised Premises" in the normal sense of that lease language. Hence that claim by Holmes is also lacking in merit.
 
 
 33
 That leaves Holmes' final challenge: its assertion that the $313,185.83 awarded to ADT in attorneys' fees was excessive. Although Holmes has ignored the applicable standard of review, a district court's award of attorneys' fees is reversible only for abuse of discretion (Washington v. Philadelphia County. Ct. Com. Pl., 89 F.3d 1031, 1034 (3d Cir. 1996)).
 
 
 34
 In its 14-page order the district court explained its reduction of ADT's requested fees by $90,255, reflecting (1) time spent in reviewing the indemnification claim against Holmes, (2) time that the court considered excessive or redundant and (3) expenses considered to be non- reimbursable overhead. Despite that carefully articulated set of downward adjustments, Holmes charges that the district court abused its discretion by not reducing the award by a greater percentage. But that ipse dixit is unaccompanied by any reasoned basis for labeling the district court's determination an abuse of discretion. We affirm that final aspect of the district court's decisions.
 
 Conclusion
 
 35
 We AFFIRM the district court's grant of summary judgment on National Fulfillment's claims against ADT, its denial of sanctions for ADT's alleged discovery violations, its decision that National Fulfillment is not required to indemnify Holmes and its determination that Holmes is required to pay ADT $313,185.83 pursuant to the Holmes- ADT Contract.
 
 
 
 Notes:
 
 
 *
 Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.
 
 
 [1]
 Eugene Krueger was one of two general partners in Holmes and was the sole shareholder of Krueger Associates at the time of the fire. We refer to appellants as "Holmes" and "National Fulfillment" to avoid any confusion that might result from the use of the Krueger name to designate either appellant.
 
 
 [2]
 Indeed, any claimed error the district court might arguably have made in reconsidering the motion would have been harmless in any event.
 
 
 [3]
 Though National Fulfillment's counsel made a more general reference to Restatement S324A during oral argument, its briefs on appeal focused entirely on its claim of reliance (the subject covered by subsection (c)). It is scarcely in a position to expand its contentions belatedly in that fashion, but in any event subsection (b) is plainly inapplicable by its terms, and any subsection (a) claim would be scotched by the holding in Turbe v. Government of the Virgin Islands, 938 F.2d 427, 432 (3d Cir. 1991).
 
 
 [4]
 Although National Fulfillment contends that Cucchi v. Rollins Prot. Servs. Co., 574 A.2d 565 (Pa. 1990) holds that the UCC applies to transactions involving the lease of goods (specifically, a burglar alarm system), that seriously overstates Cucchi's holding. Cucchi involved a plurality opinion in which only two of the seven justices found that UCC Art. 2 applied to the lease of the burglar alarm system, while the majority of the justices disavowed that proposition. Since then the Pennsylvania Supreme Court has emphasized that Cucci's precedential authority "is limited to the facts of that case" (Keblish v. Thomas Equip. Ltd., 660 A.2d 38, 40 n.1 (Pa. 1995))--the type of damnation by faint praise that signals an exceedingly weak reed on which to lean.
 
 
 [5]
 We are relatedly constrained to observe that the presentation of the "facts" relating to this appeal in National Fulfillment's briefs before us was improperly one-sided, not at all in conformity with the responsibility of an appellant to tender an objective portrayal. And National Fulfillment spent an inordinate amount of time arguing that ADT's alleged commission of discovery violations should serve as a predicate for liability. Those unsuccessful efforts seem little more than an attempted papering over of the weakness of its original claims.
 
 
 [6]
 Both sides agree that because there is no judgment against ADT, any issues involving the validity of the indemnity provision are moot. All that remains in this portion of the appeal is the question whether the Holmes-ADT Contract required Holmes to pay ADT's defense costs.
 
 
 [7]
 Holmes also contends that it should be permitted to participate in or control ADT's defense. Because our disposition ends this case, any such prospective request for participation or control is rendered moot.