**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2462
_____

CHRIS WASHINGTON-EL,
Appellant

v.

DAVID DIGUGLIELMO; JOHN MURRAY; A.S. WILLIAMSON;
GARY OLINGER; MICHAEL LORENZO; THOMAS DOHMAN,
Sued in their individual and official capacities
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 06-cv-04517)
District Judge:  Honorable J. Curtis Joyner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 22, 2011

Before:  BARRY, JORDAN AND GARTH, Circuit Judges

(Opinion filed: March 22, 2011)

_____

OPINION
_____

PER CURIAM

Chris Washington-El appeals pro se from an order, certified for immediate appeal,

1

entering summary judgment in favor of the defendants on all but one of his claims. We will affirm in part, vacate in part, and remand for further proceedings.

I.

Washington-El, a Pennsylvania state prisoner housed at all relevant times at SCI-Graterford, filed suit under 42 U.S.C. § 1983 against various prison personnel. He asserts that defendants: (1) violated his First Amendment right to exercise his religion by depriving him of a Koran and preventing him from participating in Ramadan (the "Free Exercise" claim); (2) violated his First Amendment right of access to the courts by placing him in administrative custody in the Restricted Housing Unit ("RHU") in retaliation for filing a grievance and successfully contesting a misconduct charge; (3) violated his First Amendment right of access to the courts by obstructing his attempts to litigate in various respects; (4) violated his Fifth and Fourteenth Amendment rights to procedural due process in transferring him to the RHU; and (5) violated his Eight Amendment rights by depriving him of a clean jumpsuit for four months and forcing him to shower in an area contaminated by feces. As defendants, he named his prison Superintendent (DiGuglielmo), a Deputy Superintendent (Lorenzo), three members of the Program Review Committee who reviewed his placement in the RHU (Murray, Williamson and Olinger), and the prison Security Captain who ordered it (Dohman).

Washington-El filed suit pro se but was later represented at all relevant stages by counsel. After discovery, the defendants moved for summary judgment on the merits of his claims. The District Court denied their motion on May 7, 2008, in a one-sentence

order stating merely that "there are numerous genuine issues of material fact underlying the plaintiff's claims in this case." (Dist. Ct. Docket No. 35.) Defendants then filed a second motion for summary judgment asserting qualified immunity, which they had not previously argued, and Washington-El opposed it. Neither side supplemented the record. This time, by order entered August 1, 2008, the District Court granted defendants' motion as to all but Washington-El's Free Exercise claim. In doing so, the District Court held only that Washington-El had not adduced sufficient evidence of an underlying constitutional violation, and it did not reach the issue of whether his asserted rights were "clearly established." Ray v. Twp. of Warren, 626 F.3d 170, 174 (3d Cir. 2010). Thus, the practical effect of the District Court's ruling was to reconsider its initial denial of summary judgment on the merits.

The District Court then referred the parties to a Magistrate Judge to explore settlement. At a mediation conference, the parties reached an agreement purportedly allowing Washington-El to withdraw his remaining Free Exercise claim without prejudice, immediately appeal the entry of summary judgment on his other claims, and then reassert his Free Exercise claim after this Court's decision on appeal. Washington-El filed a motion to withdraw his Free Exercise claim without prejudice pursuant to the agreement, which the District Court granted. He then filed a notice of appeal from the District Court's August 1, 2008 entry of summary judgment. (C.A. No. 08-4329.) We dismissed his appeal for lack of jurisdiction because the District Court had not certified its judgment for immediate appeal under Rule 54(b) of the Federal Rules of Civil

3

Procedure.  See Washington-El v. DiGuglielmo, 365 F. App'x 338, 340-41 (3d Cir. 2010).  Shortly thereafter, the District Court entered an order amending its August 1 judgment to certify it for immediate appeal under Rule 54(b).  Washington-El now appeals from that certified order.[1]

## II.

### A.    Law of the Case

As a threshold matter, Washington-El argues that it was improper for the District Court to grant summary judgment on claims that it previously held involved issues of material fact.  The District Court denied defendants' first motion for summary judgment on the merits because it found "numerous genuine issues of material fact underlying the plaintiff's claims[.]"  Three months later, however, and on the same record, it effectively reversed course and entered summary judgment on the merits of those same claims.  It did not acknowledge that this was the practical effect of its ruling or explain its reasons

---

[1]  The parties do not challenge the certification, but we consider it sua sponte because we would lack jurisdiction if the certification were improper.  See Gerardi v. Pelullo, 16 F.3d 1363, 1368 (3d Cir. 1994).  We review the certification of an otherwise-final order under Rule 54(b) for abuse of discretion.  See Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201-02 (3d Cir. 2006).  In this case, the District Court weighed the relevant factors and we cannot say that it abused its discretion in doing so.  As the District Court noted, Washington-El intends to appeal the summary judgment order regardless of the outcome of his Free Exercise claim.  We agree that permitting him to do so now will not result in duplication of effort on appeal, and we also believe it administratively beneficial at this point to fix the scope of further proceedings in the District Court.  Thus, we have jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over the entry of summary judgment, which is proper only if "there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law."  Carter v.

for reaching a different conclusion.

We are indeed troubled by these circumstances.  Under the law of the case doctrine, district courts are permitted to reopen previously adjudicated matters before final judgment so long as they (1) explain on the record their reasons for doing so and (2) take appropriate steps to avoid prejudicial reliance on the previous ruling.  See Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997); see also Krueger Assocs., Inc. v. Am. Dist. Tel. Co. of Pa., 247 F.3d 61, 65-66 (3d Cir. 2001) (discussing previous denial of summary judgment); Fagan v. City of Vineland, 22 F.3d 1283, 1289-90 (3d Cir. 1994) (same).  In this case, the District Court offered no explanation for effectively reconsidering its prior ruling, and its failure to do so is particularly troubling in light of the fact that it issued both rulings on the basis of an identical record.  Cf. Krueger Assocs., 247 F.3d at 65-66 (entry of summary judgment after previous denial appropriate after additional discovery).

Nevertheless, any error in this regard is harmless.  Washington-El was not prejudiced in the District Court because he responded to defendants' second motion and took no action in reliance on the prior order.  He also is not prejudiced on appeal because our review is plenary.  Thus, although we are troubled by the District Court's unexplained departure from its previous ruling, that departure was harmless in this case.

## B.    The Merits

Turning to the merits, we agree that summary judgment was appropriate as to

---

McGrady, 292 F.3d 152, 157 n.2 (2002).

5

Washington-El's claims of denial of access to the courts, cruel and unusual punishment, and denial of due process, primarily for the reasons explained by the District Court and argued by defendants on appeal.[2] We also agree that summary judgment was appropriate on Washington-El's retaliation claim as to all defendants other than Dohman because Washington-El produced no evidence that those defendants were personally involved or knowingly acquiesced in Dohman's alleged retaliation. See Atkinson v. Taylor, 316 F.3d 257, 270 (3d Cir. 2003). Washington-El's retaliation claim against Dohman himself, however, must be permitted to proceed.

Washington-El claims that Dohman ordered his transfer to the RHU in retaliation

---

[2] Washington-El's claim that defendants interfered with his access to the courts fails because he has neither alleged nor produced evidence of an "actual injury"—i.e., loss of an opportunity to pursue a non-frivolous claim. See Lewis v. Casey, 518 U.S. 343, 348-49 (1996). His Eighth Amendment claim fails because he has not produced evidence either that defendants deprived him of "'the minimal civilized measures of life's necessities'" or that they acted with "deliberate indifference" in doing so. See Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997) (citation omitted). Finally, his due process claim fails because his 17-month stay in administrative custody in the RHU while at SCI-Graterford does not constitute an "'atypical and significant hardship . . . in relation to the ordinary incidents of prison life'" sufficient to deprive him of a protected liberty interest. Id. at 708 (so holding with respect to 15-month stay in administrative custody in the RHU at SCI-Graterford) (quoting Sandin v. Connor, 515 U.S. 472, 484 (1995)). In that regard, Washington-El asserts in his brief that he continued to be held in an RHU after his transfer from SCI-Graterford and that he has remained in an RHU for approximately four and one-half years. The only defendants in this case, however, are SCI-Graterford personnel, and Washington-El never amended his complaint to allege his continued detention after his transfer to another prison or assert claims on that basis. Cf. Giano v. Selsky, 238 F.3d 223, 225-26 (2d Cir. 2001) (aggregating pre- and post-transfer confinement in suit regarding current confinement). To the contrary, he filed a separate lawsuit regarding his post-transfer confinement, and that suit remains pending as of the date of this opinion. (Washington-El v. Beard, W.D. Pa. Civ. No. 08-cv-01688.) Washington-El's challenge to his continued, post-transfer detention in the RHU is most

for his filing of a grievance and defeat of a disciplinary charge that Dohman filed against him. The relevant undisputed facts are as follows. Dohman ordered a search of Washington-El's cell on May 8, 2005, during which officers confiscated three telephone books that Washington-El claims contained information regarding witnesses in his criminal case. On November 25, 2005, he filed a grievance seeking the return of those materials, and the grievance ultimately was sustained and the materials returned to him (albeit some seven months later). Shortly before that, on October 3, 2005, Washington-El successfully contested a misconduct charge that Dohman had filed against him for allegedly being present in an unauthorized area. Then, on February 20, 2006, Dohman ordered Washington-El's placement in administrative custody in the RHU, purportedly on the basis of information that he "may have been responsible" for an altercation between two other inmates. Washington-El claims that Dohman really ordered his transfer to the RHU in retaliation for defending against the misconduct charge and filing the grievance.

In order to prevail on this claim, Washington-El ultimately must prove that: (1) he engaged in constitutionally protected activity; (2) he suffered "adverse action" as a result; and (3) his protected activity was a "'substantial or motivating factor'" for the adverse action—i.e., causation. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (citation omitted). If Washington-El makes that showing, the burden shifts to Dohman to prove that he "would have made the same decision absent the protected conduct for reasons

appropriately addressed in that suit and in any appeal therefrom.

reasonably related to a legitimate penological interest." Id. at 334.

In this case, there is no dispute that the first two elements are satisfied: defendants concede that Washington-El's activity was constitutionally protected and that his transfer to the RHU was sufficiently adverse. The only element at issue is causation. The District Court concluded that Washington-El failed to make a sufficient showing on this element because Washington-El's "evidence, consisting of his own account of Dohman's displeasure and of affidavits of fellow prisoners, is weak and we are not persuaded that he has satisfied the elements necessary to sustain a retaliation claim." (Dist Ct. Docket No. 43 at 10.) The strength of Washington-El's evidence, however, is not the proper focus, and whether he has proven his claim is not the test. "The judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Carter, 292 F.3d at 157 n.2. Although the issue is a close one, we agree with Washington-El that his evidence would permit a reasonable factfinder to find in his favor.

Dohman asserts that he placed Washington-El in the RHU for a single reason: "In February of 2006, I received information that . . . Washington-El may have been responsible for an altercation between two inmates in the Institution. Based upon this information, I placed Washington-El in the [RHU] in Administrative Custody pending an investigation." (Dist. Ct. Docket No. 25-1 at 26-27 ¶¶ 4-5.) Defendants' interrogatory responses confirm that this was the only stated reason. (Dist. Ct. Docket No. 33-1 at 14 ¶

8

3) ("Plaintiff was placed in Administrative Custody due to Dohman having information that Washington-El was involved in injuries to another inmate in the institution[.]"). Defendants have provided no further detail regarding this "information," such as its nature, its source, or the reliability thereof. Washington-El has adduced evidence which, viewed in the light most favorable to him, both calls Dohman's stated reason into question and suggests that the actual reason may have been retaliation.

Washington-El has submitted affidavits from the two inmates involved in the altercation, Gary Dorsey and Jose Sanchez. Dorsey states that Dohman interviewed him five days before ordering Washington-El to the RHU. According to Dorsey, Dohman asked him whether Washington-El had been involved in the altercation, and Dorsey responded that he had not. (Dist. Ct. Docket. No. 33-1 at 10 ¶¶ 1-2.) The day after Dohman placed Washington-El in the RHU, he interviewed Sanchez, and Sanchez too told him that Washington-El had not been involved. (Id. at 5 ¶¶ 1-4.) Though Dohman claims he ordered Washington-El's transfer to the RHU pending an investigation into this altercation, he did not similarly transfer Dorsey and Sanchez, the inmates actually involved in it. (Id. at 3 ¶ 12.) This differential treatment supports an inference of causation. See Brennan v. Norton, 350 F.3d 399, 421 (3d Cir. 2003).

Washington-El remained in the RHU for the duration of his confinement at SCI-Graterford. During that time, Dohman gave at least two other reasons for keeping him in the RHU—that he received "information" that Washington-El was planning an escape and that he kept Washington-El in the RHU "to prevent him from trafficking of drugs

9

within the Institution." (Dist. Ct. Docket No. 25-1 at 27 ¶¶ 6-7.) These shifting rationales for holding Washington-El in the RHU also support an inference of causation. See Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-21 (3d Cir. 2000)).

Finally, Washington-El also has adduced evidence bearing on Dohman's actual motivation for the transfer. According to Washington-El's affidavit, Dohman searched his cell in December 2005 and "expressed dissatisfaction" with the dismissal of the disciplinary charge and Washington-El's grievance. (Dist. Ct. Docket No. 33-1 at 2 ¶ 10.) Then, on the day that Dohman transferred him to administrative custody, Dohman questioned him about the altercation between Dorsey and Sanchez and "reiterated his dissatisfaction of plaintiff having been found not guilty of misconduct and grievance complaint filed." (Id. at 2 ¶ 11.) The next day, Dohman interviewed Sanchez. When Sanchez told him that Washington-El had not been involved, Dohman "became irate, and persistent" and "expressed his disgust and dismay for . . . Mr. Washington's involvement of filing grievances and a lawsuit. And expressed his vengeance toward both Mr. Washington and myself." (Id. at 5 ¶¶ 4-6.) Finally, an inmate named Rasheed Williams, whose affidavit Washington-El has submitted, states that Dohman "asked me about a grievance complaint I had filed against his office and then tried to intimidate[.] He asked did I want to be in the hole for a long time like Washington for filing grievances he could arrange it." (Id. at 6.) Taken together, Washington-El's evidence permits the reasonable inference that his constitutionally protected conduct was a "substantial or motivating

10

factor" for Dohman's decision to order his transfer to the RHU on February 20, 2006, and to hold him there for at least some period of time thereafter. Rauser, 241 F.3d at 333.

Defendants raise two principal arguments to the contrary, but neither is persuasive. First, they argue that the temporal proximity of Washington-El's protected activity and his transfer to the RHU does not suggest retaliation because Dohman did not order Washington-El's transfer until four months after he defeated the misconduct charge, three months after he filed his grievance, and two months after Dohman first "expressed dissatisfaction" with those developments. See Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003); Rauser, 241 F.3d at 334. "'It is important to emphasize," however, "that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn.'" Marra, 497 F.3d at 302 (citation omitted). Thus, even in the absence of an unusually suggestive temporal proximity, a plaintiff can show "that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (quoting Farrell, 206 F.3d at 281). As explained above, the record taken as a whole permits that inference in this case.

Second, defendants argue that, even if Washington-El had met his initial burden to show causation, the record shows that Dohman would have ordered his transfer to the RHU anyway for legitimate penological reasons. They base this argument primarily on

11

an investigation begun in December 2005 into allegations that Washington-El was conspiring with two SCI-Graterford staff members to smuggle marijuana and other contraband into the prison. During that investigation, Dohman received information that these staff members might also be conspiring to help Washington-El escape from prison. The investigation ultimately resulted in a federal criminal action against the staff members, who pleaded guilty to various related crimes. Washington-El himself does not appear to have been charged. Defendants argue that, even if Washington-El was only "tangentially" involved with the suspect staff members, it was "essential" to hold him in the RHU to prevent him from interacting with those staff members and to prevent his escape from prison. (Defs.' Br. at 37.)

We are mindful of the deference we owe to prison officials in such matters, see Rauser, 241 F.3d at 334, and we have no doubt that these circumstances would more than justify Washington-El's placement in the RHU. Dohman himself, however, does not claim that these circumstances are what led him to order that placement. Instead, Dohman claims that he did so only because he suspected that Washington-El was involved in the altercation between two inmates, and he claims that his separate investigation into the staff members became a reason for keeping him in the RHU only at some point thereafter. (Dist. Ct. Docket No. 25-1 at 26-27 ¶¶ 4-7.)[3] It may be that this

_____

[3] In his affidavit, Dohman states that he received information in December 2005 that Washington-El was involved with staff members in smuggling marijuana, but "was asked to leave [him] in the general population" in order to build a case. (Dist. Ct. Docket No. 25-1 at 26 ¶ 3.) He does not claim that anything about this investigation had changed

12

investigation became a legitimate penological reason for holding Washington-El in the RHU at some point in time, but, on the existing record, it does not explain Dohman's decision to transfer him there in the first place. Thus, the record does not permit summary judgment in favor of Dohman on this issue.

One final matter warrants discussion. Washington-El seeks both damages and an injunction requiring his immediate release from the RHU. Although Washington-El contends that he remains in an RHU, he is now in a different facility following his transfer from SCI-Graterford, and the only defendants in this action are SCI-Graterford personnel. Thus, although the parties have not raised this issue, it appears that his claim for injunctive relief in this action may be moot. See Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003). The District Court should address that issue as appropriate on remand.

Accordingly, we will affirm the District Court's judgment as to all claims but the retaliation claim and remand for further proceedings. In doing so, we hold merely that Washington-El has adduced sufficient evidence of retaliation to proceed to trial, and we express no opinion on whether he might ultimately prevail.

---

when he decided to place Washington-El in the RHU on February 20, 2006, and asserts instead that he decided to do so only to investigate the altercation between two other inmates. (Id. at 26-27 ¶¶ 4-5.) Curiously, defendants do not defend Dohman's actual rationale in their brief.

13